1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10 BRIAN DOW LEE,           )    NO. CV 09-3723-CT
                           )

11          Plaintiff,     )    OPINION AND ORDER
                           )

12            v.           )
                           )

13 MICHAEL J. ASTRUE,      )
Commissioner of        )

14 Social Security,       )
                           )

15                        )
         Defendant.     )

16                        )
_____)

17

18     For the reasons set forth below, it is ordered that judgment be

19 entered in favor of defendant Commissioner of Social Security ("the

20 Commissioner") because the Commissioner's decision is supported by

21 substantial evidence and is free from material legal error.

22                     SUMMARY OF PROCEEDINGS

23     On May 26, 2009, plaintiff, Brian D. Lee ("plaintiff"), filed a

24 complaint seeking judicial review of the denial of benefits by the

25 Commissioner pursuant to the Social Security Act ("the Act"). On August

26 14, 2009, plaintiff filed a memorandum in support of plaintiff's

27 complaint. On October 13, 2009, the Commissioner filed a brief in

28 opposition.

1

### SUMMARY OF ADMINISTRATIVE RECORD

2

1.  Proceedings

3    On October 17, 2006, plaintiff filed applications for disability
4    insurance benefits and Supplemental Security Income ("SSI"), (TR 90-99),[1]
5    alleging disability since October 1, 2005, due to diabetes with
6    neuropathy.  (TR 111.)  The applications were denied initially and upon
7    reconsideration.  (TR 60-63, 67-71.)

8    On June 5, 2007, plaintiff filed a request for a hearing before an
9    administrative law judge ("ALJ").  (TR 72.)  On April 3, 2008,
10   plaintiff, represented by an attorney, appeared and testified before an
11   ALJ.  (TR 29-43.)  The ALJ also considered vocational expert ("VE")
12   testimony.  (TR 43-47.)

13   On April 9, 2008, the ALJ issued a decision that plaintiff was not
14   disabled, as defined by the Act, and thus was not eligible for benefits,
15   because he remains able to perform a limited range of medium work.  (TR
16   8-13.)

17   On April 11, 2008, plaintiff filed a request with the Social
18   Security Appeals Council to review the ALJ's decision.  (TR 28.)  On
19   March 20, 2009, the request was denied.  (TR 20-23.)  Accordingly, the
20   ALJ's decision stands as the final decision of the Commissioner.

21   Plaintiff subsequently sought judicial review in this court.

22   2.  Summary Of The Evidence

23   The ALJ's decision is attached as an exhibit to this opinion and
24   order and materially summarizes the evidence in the case.

25

26   [1]    "TR" refers to the transcript of the record of
27   administrative proceedings in this case and will be followed by
     the relevant page number(s) of the transcript.

28

2

1 | PLAINTIFF'S CONTENTIONS

2 | Plaintiff contends:

3 | 1. The finding that plaintiff retains the ability to perform medium
4 | exertion lacks the support of substantial evidence; and,

5 | 2. The ALJ failed to articulate clear and convincing reasons for
6 | rejecting plaintiff's testimony.

7 | STANDARD OF REVIEW

8 | Under 42 U.S.C. §405 (g), this court reviews the Commissioner's
9 | decision to determine if: (1) the Commissioner's findings are supported
10 | by substantial evidence; and, (2) the Commissioner used proper legal
11 | standards. Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996).
12 | Substantial evidence means "more than a mere scintilla," Richardson v.
13 | Perales, 402 U.S. 389, 401 (1971), but less than a preponderance.
14 | Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

15 | When the evidence can reasonably support either affirming or
16 | reversing the Commissioner's conclusion, however, the Court may not
17 | substitute its judgment for that of the Commissioner. Flaten v.
18 | Secretary of Health and Human Services, 44 F.3d 1453, 1457 (9th Cir.
19 | 1995). The court has the authority to affirm, modify, or reverse the
20 | Commissioner's decision "with or without remanding the cause for
21 | rehearing." 42 U.S.C. §405(g).

22 | DISCUSSION

23 | 1. The Sequential Evaluation

24 | A person is "disabled" for the purpose of receiving social security
25 | benefits if he or she is unable to "engage in any substantial gainful
26 | activity by reason of any medically determinable physical or mental
27 | impairment which can be expected to result in death or which has lasted

28 |

3

1  or can be expected to last for a continuous period of not less than 12
2  months."   42 U.S.C. §423(d)(1)(A).

3       The Commissioner has established a five-step sequential evaluation
4  for determining whether a person is disabled.  First, it is determined
5  whether the person is engaged in "substantial gainful activity." If so,
6  benefits are denied.

7       Second, if the person is not so engaged, it is determined whether
8  the  person  has  a  medically  severe  impairment  or  combination  of
9  impairments.   If the person does not have a severe impairment or
10 combination of impairments, benefits are denied.

11      Third, if the person has a severe impairment, it is determined
12 whether the impairment meets or equals one of a number of "listed
13 impairments." If the impairment meets or equals a "listed impairment,"
14 the person is conclusively presumed to be disabled.

15      Fourth, if the impairment does not meet or equal a "listed
16 impairment," it is determined whether the impairment prevents the person
17 from performing past relevant work.  If the person can perform past
18 relevant work, benefits are denied.

19      Fifth, if the person cannot perform past relevant work, the burden
20 shifts to the Commissioner to show that the person is able to perform
21 other kinds of work.  The person is entitled to benefits only if the
22 person is unable to perform other work.  20 C.F.R. §§ 404.1520, 416.920;
23 Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

24      2.   Residual Functional Capacity ("RFC"):  Issues #1 and #2

25      Plaintiff contends the assessment of his RFC is not supported by
26 substantial evidence because the ALJ did not sufficiently articulate why
27 he reduced plaintiff's RFC to a "medium" level of exertion from the

28

unlimited exertion level opined in the record, rather than limiting him to a "light" or "sedentary" work level,[2] and, furthermore, because the ALJ improperly omitted from the RFC additional, credible functional limitations testified to by plaintiff.

The RFC is the most an individual can still do after considering

---

[2] The social security administration classifies the exertional requirements for jobs as "sedentary," "light," "medium," "heavy," and "very heavy" as follows:

(a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met;

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time;

(c) Medium work. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work;

(d) Heavy work. Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work;

(e) Very heavy work. Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. If someone can do very heavy work, we determine that he or she can also do heavy, medium, light and sedentary work.
See 20 C.F.R. §§ 404.1567; 416.967.

1 | the effects of any physical or mental limitations that affect the
2 | ability to perform work-related tasks. 20 C.F.R. §§ 404.1545, 416.945.
3 | In assessing a plaintiff's RFC, the Commissioner is to consider all
4 | relevant evidence, including medical evidence and plaintiff's testimony.
5 | Id. at §§ 404.1545 (a)(3), 416.945(a)(3).

6 |     The court observes, first, that by finding a more restrictive RFC
7 | than that opined by the medical sources, the ALJ's assessment inures to
8 | plaintiff's benefit. Thus, to the extent there is any error here, it
9 | would be harmless. See, e.g., Curry v. Sullivan, 925 F.2d 1127, 1129-30
10 | (9th Cir. 1990)(holding ALJ's mistaken conclusion regarding plaintiff's
11 | age and education was harmless error when denying benefits because it
12 | did not affect result).

13 |     In any event, the court finds no error in the ALJ's decision.

14 |     The ALJ found that plaintiff is impaired, as that term is defined
15 | by the Act, due to diabetic peripheral neuropathy. (TR 10.) In
16 | assessing the functional limitations this imposes, the ALJ evaluated
17 | plaintiff's treatment records, the opinions and findings of a
18 | consultative medical examiner, the opinion of a reviewing physician, and
19 | plaintiff's testimony. (See TR 10-12.) This record indicates that the
20 | consultative examiner and reviewing physicians were the only physicians
21 | who offered opinions as to plaintiff's RFC. (See TR 180-86, 188-92.)
22 | Both concluded that, notwithstanding his peripheral neuropathy,
23 | plaintiff remains able to perform a full range of work, i.e., work at
24 | all exertional levels, but that he must avoid unprotected heights and
25 | hazards and vibration. Both specifically found that plaintiff's
26 | impairment imposes no limitations in his ability to sit, stand, or walk.
27 | (See TR 185,.)

28 |

1    Plaintiff testified, on the other hand, that he suffers from neural
2    deficits in his upper extremity, and cannot sit, stand, or walk for any
3    significant length of time.  (E.g., TR 38, 39.)  The ALJ credited these
4    subjective statements to a large extent. Specifically, the ALJ
5    concluded, notwithstanding the virtually unlimited RFC opined by the
6    consultative and reviewing physicians, that plaintiff can perform only
7    at a "medium" level of exertion, stand or walk only for up to six hours
8    per workday, and that he must avoid work around heights and moving
9    machinery.   (TR 10.)   In arriving at this finding, the ALJ did not
10   reject the opinions and findings of the physicians of record altogether
11   but, instead, specifically stated that he declined to give them weight
12   to the extent they found "no" exertional limitations.  Not only was it
13   legally permissible for the ALJ to narrow the RFC to account for
14   plaintiff's credible testimony, he was legally required to do so.  See
15   Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001) ("Generally,
16   a [plaintiff's] credibility becomes important at the stage where the ALJ
17   is assessing [RFC], because the [plaintiff's] subjective statements may
18   tell of greater limitations than can medical evidence alone.")

19   Additionally, the ALJ's finding that plaintiff was credible only to
20   a partial extent is likewise legally sufficient.  The ALJ must give
21   specific, convincing reasons for rejecting plaintiff's subjective
22   statements.  Tonapetyan v. Halter, 242 F.3d at 1147-48 (citing Fair v.
23   Bowen, 885 F.2d 597, 602 (9th Cir. 1989)). (citing Fair v. Bowen, 885
24   F.2d at 602)).  See also Bunnell v. Sullivan, 947 F.2d 341, 343 (9th
25   Cir. 1991).  Although the ALJ may not reject plaintiff's statements
26   regarding his limitations for the sole reason that they are unsupported
27   by objective medical evidence, a lack of medical support or conflict

28
                                    7

1  with the record may weigh into the credibility determination.  Bunnell
2  v. Sullivan, 947 F.2d at 343.   Moreover, the ALJ may employ "ordinary
3  techniques of credibility evaluation," and may therefore consider, for
4  example, evidence of inconsistent statements in the record.  See Orn v.
5  Astrue, 495 F.3d 625, 639 (9th Cir. 2007).   So, for example, the ALJ is
6  permitted to consider whether the plaintiff's description of daily
7  activities contradicts plaintiff's other testimony.   See id. at 639
8  (noting that there are two grounds for using daily activities in
9  credibility determinations, first in evaluating whether the plaintiff
10  is, in fact, disabled to the extent claimed; second, in evaluating
11  whether plaintiff has made consistent statements).

12        Generally, the Commissioner's assessment of plaintiff's credibility
13  should be given great weight.   Nyman v. Heckler, 779 F.2d 528, 531 (9th
14  Cir. 1985).   Although the ALJ's interpretation of plaintiff's testimony
15  may not be the only reasonable one, if it is supported by substantial
16  evidence "it is not [the court's] role to second-guess it." Rollins v.
17  Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing Fair v. Bowen, 885
18  F.2d 597, 604 (9th Cir. 1989)).

19        The ALJ rejected plaintiff's subjective testimony to the effect
20  that he is acting under limitations greater than those reflected in the
21  RFC for the following reasons:

22  •     plaintiff's complaints are out of proportion to the objective
23        medical findings and the treatment recommended by his physicians;
24  •     there is no evidence of muscle atrophy or wasting, which
25        contradicts plaintiff's claims of inactivity and inability to
26        function; and,

27  •     plaintiff's statements regarding his limitations are inconsistent
28

1    with his statements regarding his activities of daily living.

2    Although plaintiff complains that the ALJ made factual errors or

3    drew unsupported inferences within these individual findings, the court

4    concludes that the credibility determination is, on whole, based upon

5    substantial evidence of record and that the ALJ has provided legally

6    sufficient and non-arbitrary reasons for declining to entirely credit

7    plaintiff subjective statements.  See Carmickle v. Comm'r, 533 F.3d 1155

8    1163 (9th Cir. 2008) (any error by ALJ with respect to one or mor

9    factors in credibility determination is harmless if the remaining

10   reasons are specific findings related to the plaintiff's ability to work

11   and demonstrate that the ALJ's credibility finding is not arbitrary).

12   Accordingly, there is no material legal error here.

13                              CONCLUSION

14   Plaintiff clearly has severe impairments.  A plaintiff who can

15   still perform work in the national economy, even with a severe

16   impairment, is not disabled as that term is defined by the Act.  See

17   generally Baxter v. Sullivan, 923 F.2d 1391, 1395 (9th Cir. 1991).

18   Furthermore, if the evidence can reasonably support either affirming or

19   reversing the Commissioner's conclusion, the court may not substitute

20   its judgment for that of the Commissioner.  Flaten v. Sec'y of Health

21   and Human Servs., 44 F.3d at 1457.

22   After careful consideration of the record as a whole, the

23   magistrate judge concludes that the Commissioner's decision is supported

24   by substantial evidence and is free from material legal error.

25   //

26   //

27   //

28

1  Accordingly, it is ordered that judgment be entered in favor of the

2  Commissioner.

3

4  DATED:  11/23/09

5                                    _____

6                                    CAROLYN TURCHIN
                                     UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        10

## SOCIAL SECURITY ADMINISTRATION
### Office of Disability Adjudication and Review

### DECISION

**IN THE CASE OF**

**CLAIM FOR**

Period of Disability and Disability Insurance
Benefits

Brian Dow Lee
_____
(Claimant)

_____

_____
(Wage Earner)

_____
(Social Security Number)

## JURISDICTION AND PROCEDURAL HISTORY

On October 2, 2006, the claimant filed an application for a period of disability and disability insurance benefits, alleging disability beginning October 1, 2005 diabetes with neuropathy and hypertension. The claim was denied initially on January 10, 2007, and upon reconsideration on April 25, 2007. Thereafter, the claimant filed a timely written request for hearing on June 5, 2007 (20 CFR 404.929 *et seq.*). The claimant appeared and testified at a hearing held on April 3, 2008, in Long Beach, CA. Randi Langford-Hetrick, an impartial vocational expert, also appeared at the hearing. The claimant is represented by Todd Greenwald, an attorney.

## ISSUES

The issue is whether the claimant is disabled under sections 216(i) and 223(d) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

There is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2006 (hereinafter "the date last insured"). Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful consideration of all the evidence, the undersigned concludes the claimant was not under a disability within the meaning of the Social Security Act from October 1, 2005 through the date last insured.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a)). The steps are followed in order. If it is determined that the

See Next Page



8



claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574 and 404.1575). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f)). The term past relevant work means work performed (either as the claimant actually performed it, or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b) and



EXHIBIT 9

Brian Dow Lee (████████)                                        Page 3 of 6

404.1565).  If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled.  If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience.  If the claimant is able to do other work, he is not disabled.  If the claimant is not able to do other work and meets the duration requirement, he is disabled.  Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration.  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g) and 404.1560(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1.  The claimant last met the insured status requirements of the Social Security Act on December 31, 2006.**

**2.  The claimant did not engage in substantial gainful activity during the period from his alleged onset date of October 1, 2005 through his date last insured of December 31, 2006 (20 CFR 404.1520(b) and 404.1571 et seq.).**

**3.  Through the date last insured, the claimant had the following severe impairment: diabetic peripheral neuropathy (20 CFR 404.1520(c)).**

**4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**

The undersigned has considered all of the medical Listings relevant to the claimant's severe impairment, but the undersigned does not find (as fully discussed below) that the claimant's impairment meets or equals any of the medical Listing or combination of medical Listings.

**5.  After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently, stand/walk 6 hours in an 8-hour workday, sit 6 hours in an 8-hour workday, and avoidance of heights and moving machinery.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p.

See Next Page

EXHIBIT     10

The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

The medical evidence of record shows that the claimant has diabetic peripheral neuropathy with sensory changes in the lower extremities only (Exhibit 1F/3). However, there is no evidence of motor strength deficit or other abnormalities of the upper and lower extremities (Exhibits 1F/2, 2F, 3F, and 6F). The claimant does not require the use of an assistive device for ambulation and there is no evidence of significant gait disturbance despite the peripheral neuropathy (Exhibit 3F/3). No doctor has told the claimant to elevate the legs or otherwise prescribed any limitations on standing, walking or sitting. The claimant demonstrated grip strength of 100 pounds in each hand at the consultative examination on December 18, 2006 (Exhibit 3F/3).

The claimant was diagnosed with mild retinopathy on March 20, 2006 (Exhibit 2F/8). However, his visual acuity with glasses on December 18, 2006 was 20/25 in both eyes (Exhibit 3F/8). The undersigned finds that the claimant's mild retinopathy is not a severe impairment.

The claimant also has a history of hypertension, but the records show that it is not symptomatic and there is no evidence of end organ damage. The claimant denies any history of coronary artery disease, myocardial infarction infarction, cerebrovascular accident, etc. (Exhibit 3F/1). The undersigned finds that the claimant's hypertension is not a severe impairment.

The internist consultative examiner (Exhibit 3F) and Disability Determination Services medical consultants (Exhibits 4F and 7F) found the claimant able to perform work at all exertional levels with avoidance of unprotected heights and hazards and vibration due to peripheral neuropathy.

Thus, the record shows that the claimant has diabetic peripheral neuropathy involving the lower extremities only. However, there is no evidence that it significantly interferes with his ability to stand, walk or sit. The undersigned does not give weight to the assessments from the internist consultative examiner and Disability Determination Services medical consultants finding no exertional limitation because of the claimant's diabetic peripheral neuropathy. The undersigned also rejects the assessment from the Disability Determination Services medical consultants of limited feeling because there is no evidence of peripheral neuropathy in the upper extremities.



EXHIBIT

11



Accordingly, the undersigned finds that the claimant has the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently, stand/walk 6 hours in an 8-hour workday, sit 6 hours in an 8-hour workday, and avoidance of heights and moving machinery.

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

The claimant's subjective complaints and alleged limitations are out of proportion to the objective findings as noted above. There is no evidence of severe disuse muscle atrophy that would be compatible with the claimant's alleged inactivity and inability to function.

The claimant's subjective complaints and alleged limitations are not consistent with his treatment. The claimant reports that he uses a cane (Exhibit 3E/3), but there is no evidence that he was prescribed a cane or other assistive device by a doctor or that one is medically necessary. There is also no evidence that he uses an orthodic device for peripheral neuropathy.

The claimant's allegation of disabling peripheral neuropathy is not consistent with his activities of daily living. He is able to drive a manual transmission car which requires repetitive pushing of a clutch pedal (Exhibit 3E/4). He also does all household chores such as vacuuming, dusting, dishes and general cleaning (Id.), as well as grocery shop (testimony).

**6.   Through the date last insured, the claimant's past relevant work as cabinet maker did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).**

The vocational expert testified in response to a hypothetical question assuming the claimant's age, education, vocational background, and limitations outlined above, that such a hypothetical individual could perform the claimant's past relevant work as cabinet maker, medium, skilled, as well as other medium, unskilled jobs such as night cleaner, 4,000 locally and 80,000 nationally, hand packager, 6,800 locally and 203,000 nationally, and light, unskilled jobs such as cleaner/housekeeping, 27,000 locally and 160,000 nationally, and cleaner/polisher, 1,100 locally and 31,000 nationally.

In comparing the residual functional capacity the claimant had as of the date last insured with the physical and mental demands of this work, the undersigned finds that the claimant was able to perform it as it was actually and generally performed.

**7.   The claimant was not under a disability as defined in the Social Security Act, at any time from October 1, 2005, the alleged onset date, through December 31, 2006, the date last insured (20 CFR 404.1520(f)).**



Brian Dow Lee ▮▮▮▮▮▮▮                                    Page 6 of 6

### DECISION

Based on the application for a period of disability and disability insurance benefits filed on October 2, 2006, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act through December 31, 2006, the date last insured.

*Edward C. Graham / SAW*

Edward C. Graham
Administrative Law Judge

**APR 0 9 2008**
_____
Date

**EXHIBIT** 13